IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTINA CRUZ,

      Plaintiff,

      v.                                                  No. 2:23-CV-00986 GJF/KRS

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, a body
corporate of the State of New Mexico, for
itself and its public operations, including the
UNIVERSITY OF NEW MEXICO HOSPITAL,

      Defendants.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Board of Regents of the University of New Mexico, by and

through counsel of record, Kennedy, Moulton & Wells, P.C., by Debra J. Moulton, and hereby

submits its Motion for Summary Judgment as follows:

### I. **Introduction**

University of New Mexico Hospital ("UNMH") extended a conditional offer of

employment to Plaintiff Christina Cruz as a Psychologist on October 26, 2021.  Employment was

contingent upon her passing the health screening, drug screening, and successful completion of

any applicable criminal records background investigation.  Plaintiff was also advised that UNM

Hospital followed the Governor's Health Order and required all employees to be COVID

vaccinated; alternatively, employees could request an exemption.  Plaintiff indicated that she

wished to file an exemption from the vaccination requirement and an exemption form was sent to

her on October 26, 2021 by email to be completed and returned to UNMH Occupational Health

Services.  When Plaintiff completed her COVID Immunization Exemption Form, on April 13,

2022, she refused to agree to the only accommodation to vaccination provided for by law, i.e.,

weekly testing.  After Defendant confirmed that Plaintiff refused both the vaccination and weekly testing requirements, UNMH's conditional offer of employment was rescinded on April 24, 2022.

## II.  Statement of Undisputed Material Facts

1.  UNMH extended a conditional offer of employment as a Psychologist to Plaintiff on October 26, 2021.  *See,* Letter to Christina Cruz from Ted Padilla, Senior Talent Acquisition Partner, dated October 26, 2021, attached hereto as Exhibit A.

2.  In the offer letter, Plaintiff was advised that employment was contingent on passing the health screening, drug screening, and successful completion of any applicable criminal records background investigation.  *See*, Exhibit A.

3.  Also, Plaintiff was advised that UNM Hospital followed the Governor's Health Order and required all employees to be COVID vaccinated, or the employee must receive the first vaccine prior to their start date.  The second vaccine was to be received no later than 40 days after receiving the first vaccine.  *See*, Exhibit A.

4.  Plaintiff was also advised that if she would like to request an exemption from the COVID vaccination requirement, she should contact the Talent Acquisition Department at UNMH.  *See*, Exhibit A.

5.  Mr. Padilla spoke with Plaintiff on October 26, 2021 and Plaintiff indicated at that time that she would like to request an exemption; the exemption form was sent to her on October 26, 2021.  *See*, Email from Ted Padilla to Christina Cruz, dated October 26, 2021, attached hereto as Exhibit B.

6.  Plaintiff was advised to complete and return the exemption form to UNMH Occupational Health Services (covid-exemption@salud.unm.edu).  *See*, Exhibit B.

7. The Public Health Order (PHO) in effect at the time of UNMH extending a conditional offer of employment was dated August 17, 2021. *See*, Public Health Order New Mexico Department of Health Acting Secretary David R. Scrase, M.D., dated August 17, 2021, attached hereto as Exhibit C.

8. The PHO stated that on March 11, 2020, because of the spread of COVID-19, Governor Michelle Lujan Grisham issued Executive Order 2020-004 declaring that a Public Health Emergency existed in New Mexico under the Public Health Emergency Response Act and invoked her authority under the All Hazards Emergency Management Act. *See,* Exhibit C.

9. The PHO stated that in August of 2021, over 36 million people had been infected with COVID-19 in the United States, with over 615,000 related deaths, and the New Mexico Department of Health had reported 220,000 positive COVID-19 cases and 4,450 related deaths in New Mexico. *See*, Exhibit C.

10. The PHO stated that the currently available vaccines in August of 2021 were safe and the most effective way of preventing infection, serious illness, and death. *See,* Exhibit C.

11. The PHO stated that widespread vaccination protected New Mexico's health care system as vaccines decreased the need for emergency services and hospitalization. *See*, Exhibit C.

12. The PHO stated that the refusal to receive the COVID-19 vaccine not only endangered the individual but the entire community, and further jeopardized the progress the State had made against the pandemic by allowing the virus to transmit more freely and mutate into more transmissible or deadly variants. *See*, Exhibit C.

13. A highly transmissible variant, B.1.617.2, commonly known as the Delta variant, accounted for the majority of new infections in the United States in August of 2021.

14.  The PHO stated that New Mexico had recorded a significant increase in new COVID-19 cases in the weeks prior to August 17, 2021, with cases expected to rise even further in the Fall and Winter months.  *See*, Exhibit C.

15.  In August of 2021, the further spread of COVID-19 in the State of New Mexico posed a threat to the health, safety, and wellbeing of children who are not yet eligible to receive a vaccine; persons who could not be vaccinated due to medical reasons, immunocompromised individuals; and vulnerable persons including persons in hospitals, long-term care facilities, and other congregate care facilities.  *See*, Exhibit C.

16.  The PHO stated that all hospital workers were required to be fully vaccinated against COVID-19 within 10 days of the effective date of the Order and their second dose within 40 days of their first dose of a COVID-19 vaccine, unless they qualified for an exemption.  *See*, Exhibit C.

17.  The PHO provided that workers may be exempt from the COVID-10 vaccination requirement.  *See*, Exhibit C.

18.  The PHO stated that one such exemption from the vaccination requirement set out in the PHO was an exemption due to a sincerely held religious belief.  *See*, Exhibit C.

19.  The PHO stated: "To be eligible for an exemption due to a sincerely held religious belief, the individual must document that the request for an accommodation has been made and provide their employer or the operator of the facility they contract with a statement regarding the manner in which the administration of a COVID-19 vaccine conflicts with the religious observance, practice, or belief of the individual." *See,* Exhibit C.

20.  The PHO further stated that if a worker had met the requirements of an exemption, the unvaccinated exempt worker shall: (1) Provide adequate proof that the individual tested

negative for COVID-19 on a weekly basis; and (2) Wear a mask or multilayer cloth face covering at all times indoors at the hospital or congregate care facility except when eating or drinking." *See*, Exhibit C.

21.  The PHO further stated that "Any person, hospital, or congregate care facility who willfully violates this Order may be subject to civil administrative penalties available at law." *See,* Exhibit C.

22.  On December 2, 2021, the New Mexico Department of Health issued an Amended Public Health Emergency Order (APHEO).  *See,* Amended Public Health Emergency Order Requiring All School Workers Comply with Certain Health Requirements and Requiring Congregate Care Facility Workers, Hospital Workers and Employees of the Office of the Governor Be Fully Vaccinated and Receive Booster Vaccines, dated December 2, 2021, attached hereto as Exhibit D.

23.  By December 2, 2021, 48 million people had been infected with COVID-19 in the United States, with 770,000 related deaths, and the New Mexico Department of Health had reported 314,000 positive COVID-19 cases and 5,369 related deaths in New Mexico. *See*, Exhibit D.

24.  The APHEO stated that the available COVID-19 vaccines in December of 2021 were safe and the most effective way of preventing infection, serious illness, and death. *See*, Exhibit D.

25.  Widespread vaccination protected New Mexico's health care system as vaccines decreased the need for emergency services and hospitalizations.  *See*, Exhibit D.

26.  The APHEO stated that the refusal to receive the COVID-19 vaccine not only endangered the individual but the entire community, and further jeopardized the progress the

State had made against the pandemic by allowing the virus to transmit more freely and mutate into more transmissible or deadly variants. *See*, Exhibit D.

27.   A highly transmissible variant, B.1.617.2, commonly known as the Delta variant, accounted for the majority of new infections in the United States in December of 2021. *See,* Exhibit D.

28.   The APHEO stated that in December of 2021, new scientific data demonstrated waning immunity six months after receiving the primary series of the Pfizer-BioNTech and Moderna vaccines and two months after the Johnson & Johnson Janssen vaccine, and that those with a booster vaccine had "reduced risk for a breakthrough infection." *See,* Exhibit D.

29.   The APHEO stated that New Mexico had recorded a significant increase in new COVID-19 cases in the weeks prior to December 2, 2021, with cases expected to rise even further during the Winter months. *See*, Exhibit D.

30.   In December of 2021, the further spread of COVID-19 in the State of New Mexico posed a threat to the health, safety, and wellbeing of children who were not yet eligible to receive a vaccine; persons who could not be vaccinated due to medical reasons, immunocompromised individuals; and vulnerable persons including persons in hospitals, long-term care facilities, and other congregate care facilities. *See*, Exhibit D.

31.   By December 2, 2021, the Food and Drug Administration (FDA) had approved every adult for a booster dose six months after the completion of the individual's primary series of vaccination with Pfizer-BioNTech and Moderna vaccines or two months after the completion of the individual's primary series of vaccination with Johnson & Johnson's Janssen vaccine, and the Centers for Disease Control and Prevention (CDC) had stated that all adults 18 and over should receive a booster vaccine. *See*, Exhibit D.

32.  The APHEO stated it was of critical importance to ensure that workers in hospitals, long-term care facilities, and other congregate care facilities receive booster doses of COVID-19 vaccine, if eligible, to fight rising rates of spread in these institutions.  *See*, Exhibit D.

33.  In addition to the requirement that hospital workers be fully vaccinated, the APHEO required workers to receive a booster no later than January 17, 2022.  *See*, Exhibit D.

34.  The APHEO again provided that workers may be exempt from the COVID-19 vaccination requirement.  *See*, Exhibit D.

35.  The APHEO again stated that if a worker met the requirements for an exemption, the unvaccinated exempt worker shall: (1) Provide adequate proof that the individual tested negative for COVID-19 on a weekly basis; and (2) Wear a mask or multilayer cloth face covering at all times indoors at the hospital or congregate care facility except when eating or drinking.  *See*, Exhibit D.

36.  The APHEO stated that any person, hospital, or congregate care facility who willfully violates the APHEO vaccination requirements may be subject to civil administrative penalties available at law.  *See,* Exhibit D.

37.  The APHEO remained in effect until the Public Health Emergency ended on March 31, 2023.  *See*, Press Release dated March 3, 2023, attached hereto as Exhibit E.

38.  Plaintiff completed the COVID Immunization Exemption Form on April 13, 2022. *See*, COVID Immunization Exemption Form completed by Christina Cruz on 4/13/2022, attached hereto as Exhibit F.

39.  The Exemption Form has a Verification and Accuracy section, which states: "I understand that if granted an exemption, I will be required to comply with additional safeguards to include requests for periodic proof of negative covid testing."  *See*, Exhibit F.

40.  Plaintiff, in her Exemption Form, crossed out "to include requests for periodic proof of negative covid testing" and typed in "to include screening per CDC and OSHA for healthy persons." *See*, Exhibit F.

41.  Plaintiff submitted a letter with her modified Exemption Form in which she documented her request for an exemption from both the vaccination and COVID testing.  *See*, Letter to Human Resources Department, UNM Hospital dated April 13, 2022, attached hereto as Exhibit G.

42.  On April 21, 2022, Mr. Padilla advised Plaintiff that waiving the weekly testing requirement that was imposed by law (New Mexico Governor's public health order) was not a reasonable accommodation and doing so would present an undue burden in that it would present health risks to patients and staff deemed unacceptable by the public health order.  He further advised that her request to waive the weekly testing requirement was denied.  Mr. Padilla asked Plaintiff to advise him if she was willing to comply with the Vaccine Exemption in its original form or decline the job offer.  *See*, Email dated April 21, 2022, attached hereto as Exhibit H.

43.  Plaintiff, on April 24, 2022, asked Mr. Padilla for the code of law that he was referring to in his email and also reiterated that any law" requiring" testing was a violation of her sincerely held religious beliefs, practice, and observance and threatening her with revocation was a violation of Title VII.  *See*, Email dated April 24, 2022, attached hereto as Exhibit I.

44.  On April 24, 2022, Mr. Padilla advised Plaintiff that UNMH cannot waive or modify the testing requirement and since she had made her refusal to test clear, UNMH rescinded Plaintiff's employment offer.  *See,* Email to Christina Cruz from Ted Padilla dated April 24, 2022, attached hereto as Exhibit I.

### III.  Summary Judgment Standard

Federal Rules of Civil Procedure Rule 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The entry of summary judgment is mandated, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party who will bear the burden of proof at trial on a dispositive issue must designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. In order for an issue to be genuine, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). If there is not sufficient evidence favoring the nonmoving party, there is no issue for trial. *Id*. at 249.

Furthermore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. V. Cities Service Co.,* 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

### IV.  Legal Argument

**A.  Standard on Religious Discrimination based on Failure to Accommodate.**

Plaintiff claims that she has been discriminated under Title VII for a failure to accommodate a bona fide religious belief or, alternatively a Failure to Hire due to Defendant's failure to accommodate a bona fide religious belief.  *See,* Complaint [Doc 1].

"To survive summary judgment on a religious discrimination claim of failure to accommodate, the employee initially bears the burden of production with respect to a prima facie case." *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F. 3d 1106, 1120 (10th Cir. 2000). "The prima facie case requires the employee to show that (1) he or she had a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed his or her employer of this belief; and (3) he or she was fired [or not hired] for failure to comply with the conflicting employment requirement." *EEOC v Abercrombie & Fitch Stores, Inc.,*731 F. 3d 1106 (10th Cir. 2013). If the employee makes out a prima facie case, '[t]he burden then shifts to the employer to (1) conclusively rebut one or more elements of the … prima facie case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable reasonably to accommodate the employee's religious needs without undue hardship." *Thomas,* 225 F. 3d at 1156.

### B. Accommodating Plaintiff's request for exemption from weekly COVID testing would have imposed an undue hardship on UNMH as a matter of law.

Both the PHO and the APHEO required healthcare workers in New Mexico to have the COVID-19 vaccine and the subsequent booster. *See,* Statements of Fact No. 16 and 33. They further provided that any employee who was not fully vaccinated for any reason was required to submit to weekly COVID-19 testing. *See,* Statements of Fact No. 20 and 35. Weekly COVID testing was the only accommodation permitted by the PHO and APHEO, and healthcare facilities were required to ensure that workers were vaccinated or face the possibility of civil penalties. *See,* Statement of Fact No. 21 and 36. Therefore, Plaintiff's refusal to submit to weekly COVID-19 testing would have required UNMH to violate state law. As such, granting Plaintiff's request for exemption from state mandated weekly testing requirements would have imposed an undue hardship on UNMH.

In the Tenth Circuit, undue hardship is shown if an accommodation would cause the employer to violate the law. *Weber v. Leaseway Dedicated Logistics, Inc.,* 5 F. Supp. 2d 1219 (D. Kan. 1998), citing *Hovda v. Gregoire*, No. 96-35312, 1996 WL 481795, at *1 (9th Cir. Aug. 26, 1996) (federal statute and regulations); *United States v. Board of Educ*., 911 F.2d 882, 891 (3d Cir. 1990) (state statue); and *Bhatia v. Chevron U.S.A., Inc*., 734 F.2d 1382, 1384 (9th Cir. 1984) (state regulations). In *Weber,* the plaintiff filed a lawsuit against a potential employer because the employer refused to hire him as he would not provide a social security number to apply for a position as a commercial motor vehicle driver. *See, Weber* at 1221. Providing a social security number was required by the Internal Revenue Service and the Department of Transportation; failure to provide this information would subject both the employer and employee to potential penalties from the IRS and the DOT if they knowingly violated the requirement of not reporting an employee's social security number. *See, Weber at 1223.* The plaintiff in *Weber* claimed that he had a bona fide religious belief prohibiting his use of a social security number. *See, Weber* at 1221. The Court held that the requirement that an employee have a social security number was a requirement imposed by law, not a requirement imposed by the employer. *See, Weber* at 1222. As such, the Tenth Circuit found that the Plaintiff had failed to establish a prima facie case of religious discrimination. *Id.*

Just as a social security number is a requirement for an employer hiring a commercial truck driver, so too was the weekly testing requirement for healthcare workers during the COVID-19 pandemic while the PHO and APHEO were in effect. As in *Weber*, the requirement to either be vaccinated or, in the alternative, test negative weekly was imposed by the Governor's executive order, as permitted by state law – not a requirement imposed by UNMH. *See,*

Statement of Fact No. 8.  Thus, just as in *Weber,* the Plaintiff cannot establish a *prima facie* case of religious discrimination.

Other circuits have taken the same approach.  For example, in *Lowman v. NVI LLC*, 821 Fed. Appx. 29, 32 (2d Cir. 2020), the Second Circuit upheld the lower court's dismissal of a Title VII claim where an employer could not have granted an employee's accommodation request without violating federal law. In *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999), the Ninth Circuit stated that "[C]ourts agree than an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."  *Sutton* also involved an individual who did not wish to provide a social security number on a job application, which was contrary to law. *Id.* at 829.  Finally, in *Yeager v. FirstEnergy General Corp.*, 777 F.3d 362, 363 (6th Cir. 2015), the Sixth Circuit noted that "[e]very circuit to consider the issue has … held that Title VII does not require an employer to reasonably accommodate an employee's religious beliefs if such accommodation would violate a federal statute."

Other courts have applied the same analysis in cases involving Covid-19 vaccination requirements.  For example, in *D'Cunha v. Northwell Health Sys.,* No. 23-476-cv, 2023 WL 76986441, at *7 (2d Cir. Nov. 17, 2023), the Court affirmed dismissal of Plaintiff healthcare worker's Title VII claims because "[d]efendant could not have granted her religious exemption request without violating the State Mandate, exposing itself to potential penalties, and thereby suffering an undue hardship."  The *D'Cunha* case involved a state mandate that all personnel employed in "covered entities," such as hospitals, be vaccinated by a specific date. *Id.* at *6. The Second Circuit found that their conclusion finding undue hardship was consistent with the Supreme Court's clarification of the "undue hardship" standard in *Groff v. DeJoy*, 600 U.S. 447,

469 (2023), because the burden placed on an employer from violating a state law, like the State

Mandate in that case, is both "excessive" and "unjustifiable." *D'Cunha,* at \*8. As such, the

Second Circuit stated that the district court had correctly dismissed D'Cunha's claim of religious

discrimination.

In *Goodrich v. Good Samaritan Regional Health Center d.b.a. SSM Health Good

Samaritan Hospital – Mt. Vernon,* 22-cv-2950-DWD (S.D. Ill. Apr 23, 2023), the operative

vaccine mandate was an Executive Order signed by the Illinois Governor on September 3, 2021.

The Executive Order included a requirement that all health care workers be fully vaccinated

against COVID-19 or submit to weekly COVID-19 testing by September 19, 2021. *Id.* at \*2.

The Order also provided exemptions to the vaccination requirement for persons for whom

vaccination was "medically contraindicated" and for whom vaccination would require violating

"a sincerely held religious belief, practice, or observance." *Id.* Individuals who qualified for

either exemption were required to submit to weekly testing. *Id*. COVID-19 weekly testing was

the only accommodation permitted by the Executive Order. *Id.* at \*5. Plaintiff Goodrich

received a letter indicating that all employees who are unvaccinated must present for testing and,

because Plaintiff would not consent to testing, he was terminated via email. *Id.* at \*3.

Thereafter, Plaintiff filed a lawsuit alleging violation of Title VII, contending that his employer

failed to provide him an accommodation to his sincerely held religious belief pertaining to

COVID-19 testing requirements. *Id.* at \*4. The Court found that accommodating Plaintiff's

religious-based vaccine and weekly testing exemption requests would have imposed an undue

hardship as a matter of law because it would have required the employer to violate state law. *Id.*

at 11.

13

The Executive Order is virtually identical to New Mexico's PHO signed on August 17, 2021 and the APHEO signed on December 2, 2021.  Just as in *Goodrich*, the exemption from vaccination and the weekly testing requirements would have required UNMH to violate state law and, as such, would have imposed an undue hardship as a matter of law.  For these reasons, UNMH requests the Court find that Plaintiff's request for an exemption from vaccination and weekly testing would have violated New Mexico state law and, as such, would have imposed an undue hardship on UNMH as a matter of law.

### C.  UNMH was unable to reasonably accommodate Plaintiff's religious observance without undue hardship on the conduct of their business.

Title VII requires an employer to accommodate the religious practice of an employee unless it "demonstrates that [it] is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).  The Supreme Court has clarified recently that "undue hardship is shown "when a burden is substantial in the overall context of an employer's business."  *Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023).  A court may take into account "all relevant factors in the case at hand, including the particular accommodations at issue, and their practical impact in light of the nature, size and operating cost of an employer."  *Id*. at 2295.  The *Groff* court found that the nature of an employer's business is relevant in determining whether a hardship would be substantial.

Plaintiff's request to be exempt from the weekly testing requirement would have placed a substantial burden on UNMH because of the immense health risks to patients and staff, in a facility where vulnerable and ill people go to be treated.  This was explained to Plaintiff in the response to Plaintiff's request to waive the weekly testing requirement as outlined in the PHO and APHEO:

> Waiving the weekly testing requirement that is imposed by law (New Mexico's public health order) is not a reasonable accommodation. Waiving this weekly testing requirement presents an undue burden in that it would present health risks to patients and staff deemed unacceptable by the public health order.  UNM Hospital is required by law to reasonably accommodate religious beliefs in a fashion that does not present undue burden to other staff and patients.

*See,* Email from Ted Padilla to Plaintiff dated April 21, 2022, attached hereto as Exhibit H.   The undue hardship for UNMH arose from the increased health risk of contracting and spreading COVID-19, both to patients and co-workers, within the context of the healthcare environment.  As noted in the PHO and APHEO, the threat of the further spread of COVID-19 in the State of New Mexico posed a threat to the health, safety, and wellbeing of many individuals, such as children who at that time were not yet eligible to receive a vaccine, persons who could not be vaccinated due to medical reasons, immunocompromised individuals, and vulnerable persons including persons in hospitals or a setting where care is provided to patients.  *See*, Exhibits C and D.  Allowing the Plaintiff to be present without COVID-19 vaccination, or the booster, or weekly testing, in a healthcare environment where the most vulnerable people are often present, would exponentially put individuals and others in their community at risk to contract and spread COVID-19.  During the relevant time, the State of New Mexico had recorded a significant increase in new COVID-19 cases and cases were expected to rise even further.[1]  A highly transmissible variant, B.1.617.2, commonly known as the Delta variant, accounted for the majority of new infections in the United States.[2]   By August of 2021, the New Mexico Department of Health had reported 220,000 positive COVID-19 cases and 4,450 related deaths in New Mexico.[3]  A mere three and a half months later, the number of reported positive COVID-19 cases in New Mexico had risen to

---

[1] *See*, Statements of Fact No. 14 and 29, Exhibits C and D.
[2] *See,* Statements of Fact No. 13 and 27, Exhibits C and D.
[3] *See,* Statement of Fact No. 9, Exhibit C.

314,000 and deaths had risen to 5,369.[4]  Moreover, refusal to receive the COVID-19 vaccine or to test weekly would not only endanger the Plaintiff and those she specifically encountered, it would also endanger the entire community and jeopardize the progress the State had made against the pandemic by allowing the virus to transmit more freely and mutate into more transmissible or deadly variants.[5]  Allowing Plaintiff or any individual to be present, unvaccinated and not tested weekly, would have created a safety and liability risk for UNMH and, as such, Plaintiff's accommodation risk was an undue hardship.

Other courts have found undue hardship on employers because of this increased risk of contracting and spreading COVID-19.  *See Beuca v. Wash. State Univ.*, No. 2:23-CV-0069, 2023 WL 3575503, at *3 (E.D. Wash. May 19, 2023) (dismissing the plaintiff's claim without leave to amend because "unvaccinated healthcare workers impose an undue hardship on employers due to the increased risk of infection);" *Bushra v. Main Line Health, Inc*., 23-CV-1090, 2023 WL 9005584, at *8 (E.D. Pa. Dec. 28, 2023) (granting summary judgment and finding undue hardship if the defendant had been required to accommodate the plaintiff's religious beliefs because the unvaccinated plaintiff would have been a greater health risk to coworkers and vulnerable patients.) In *Bordeaux v. Lions Gate Entm't, Inc.,* No. 222CV0422 SCWPLA, 2023 WL 8108655, at *12 (C.D. Cal Nov. 21, 2023), the Court found that nature of Plaintiff's work required close, unmasked contact with other performers and members of the crew and determined that granting the plaintiff's vaccine accommodation request would have been an undue hardship in part because of the risk of endangering the plaintiff's co-workers.  Further, the *Bordeaux* court found that Plaintiff's increased risk of catching and transmitting COVID-19 to her co-workers would have entailed numerous logistical problems in addition to the obvious health and safety risks.

---

[4] *See,* Statement of Fact No. 23, Exhibit D.
[5] *See,* Statements of Fact No. 12 and 26, Exhibits C and D.

Another consideration regarding "undue hardship" is the possibility of civil penalties, which the Department of Health was authorized to administer for willful violations of the PHO and the APHEO.  Knowingly allowing an unvaccinated individual who refused to test weekly as an accommodation to vaccination to work in a healthcare facility in the State of New Mexico could have warranted a civil administrative penalty being assessed.

Inasmuch as weekly testing was the only accommodation under both the PHO and APHEO, UNMH had no choice but to rescind its contingent offer of employment when Plaintiff refused to agree to weekly testing.  Allowing her to begin employment would have been a willful violation of the state's Public Health Orders and would have resulted in an undue hardship for UNMH because of the safety risks to patients and staff.

## V.  Conclusion

Defendant requests that the Court grant summary judgment in its favor on both Plaintiff's claim and dismiss this lawsuit with prejudice

KENNEDY, MOULTON & WELLS, P.C

/s/ Debra J. Moulton
DEBRA J. MOULTON
Attorney for Defendant
2201 San Pedro NE, Bldg. 3, Suite 200
Albuquerque, New Mexico 87110
(505) 884-7887

I HEREBY CERTIFY that a true and correct
copy of the foregoing sent via CM/ECF to:

Counxel Legal Firm
Andrew N. Morrow, Esq.
2222 S. Dobson Rd., Suite 1104
Mesa, AZ 85202
amorrow@counxel.com
*Attorney for Plaintiff*

on this 26th day of August, 2024

*/s/ Debra J. Moulton*
DEBRA J. MOULTON