**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

CHRISTINA CRUZ,

     Plaintiff,

v.                                       Civ. No. 23-986 GJF/KRS

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, a body
corporate of the State of New Mexico, for
itself and its public operations, including the
UNIVERSITY OF NEW MEXICO HOSPITAL,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment [ECF 45] ("Defendant's Motion"), and Plaintiff's Motion for Summary Judgment [ECF 49] ("Plaintiff's Cross-Motion"). Both are fully briefed [*see* ECFs 45; 49; 48; 53; 54; 55], and the Court heard oral argument on November 1, 2024 ("Hr'g").[1] Having thoroughly considered the filings and arguments, the record evidence, and the relevant law, the Court concludes that Defendant's Motion is well-taken insofar as it relates to Plaintiff's request to forgo COVID-19 vaccination and weekly testing in favor of non-invasive screening but is not well-taken with respect to Plaintiff's request that she be temporarily permitted to work remotely. Thus, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**. For the reasons explained below, Plaintiff's Cross-Motion is not well-taken and will be **DENIED**.

---

[1] The Hr'g citation refers to an audio recording of the November 1, 2024 Motions hearing stored on the Court's Liberty system. Neither the audio recording nor a transcript is currently available on CM/ECF; however, any party may obtain the recording through the Court's records department and have it transcribed.

## I.    BACKGROUND

The facts material to the Court's resolution of the cross-motions for summary judgment are undisputed. On October 26, 2021, the University of New Mexico Hospital ("UNMH") sent Plaintiff a letter conveying a conditional offer of employment as a Psychologist. (Def.'s Mot. for Summ. J., Undisputed Fact (hereinafter "Def's UF") ¶ 1, ECF 45); Pl's Cross-Mot. for Summ. J., Undisputed Fact ("hereinafter Pl's UF") ¶ 1, ECF 49.) The original start date was to be February 7, 2022. (Pl.'s UF ¶ 2, ECF 49.) The offer letter advised that Plaintiff's employment at UNMH was contingent upon her passing a health screening, a drug screening, and a criminal background check. (Def.'s UF ¶ 2, ECF 45.) In addition, the letter explained that UNMH was following the public health order that required UNMH employees to be fully vaccinated against COVID-19 or to have received their first COVID vaccine prior to their start date, with the second vaccine to be received no later than 40 days after the first. [2] (Def.'s UF ¶ 3, ECF 45; Pl.'s UF ¶ 3, ECF 49.)

The New Mexico Department of Health's August 17, 2021 Public Health Order ("PHO") was in effect at the time Plaintiff received her conditional employment offer. (Def.'s UF ¶ 7, ECF 45; Pl's UF ¶ 12, ECF 49.) Acknowledging that the New Mexico Governor "issued Executive Order 2020-004 declaring that a Public Health Emergency exist[ed] in New Mexico under the Public Health Emergency Response Act[] and invok[ed] her authority under the All Hazards Emergency Management Act," the PHO addressed COVID vaccination requirements for individuals working in various settings, including those working in hospitals.  (Def.'s UF ¶ 8, ECF 45; Def.'s M. for Summ. J., Ex. C, ECF 45-3; Pl's UF ¶ 13, ECF 49.)

---

[2] Although the offer letter described the relevant health order as the "Governor['s] Health Order," the August 17, 2021 Public Health Order and its successor order were issued under the authority of the Acting Secretary of the New Mexico Department of Health. (*Compare* Def.'s M. for Summ. J., Ex. A, ECF 45-1, *with* Def.'s M. for Summ. J., Ex. C, ECF 45-3.) This factual distinction is immaterial to the Court's analysis or decision.

The PHO observed that over 36 million people in the United States had been infected with COVID-19, with 220,000 positive cases and 4,450 COVID-related deaths in New Mexico alone. (Def.'s UF ¶ 9, ECF 45.) It noted that the highly-transmissible B.1.617.2 variant, or "Delta variant," accounted for the majority of new infections in the United States at that time. (Def.'s UF ¶ 13, ECF 45; Def.'s M. for Summ. J., Ex. C, ECF 45-3; Def.'s Reply, UF ¶ 13.) The PHO also reported a sharp increase in new COVID-19 cases in the weeks prior to its issuance, with cases expected to rise in the fall and winter months. (Def.'s UF ¶ 14, ECF 45.) According to the PHO, the available vaccines were "safe and the most effective method of preventing infection, serious illness, and death." (Def.'s UF ¶ 10, ECF 45.) The PHO suggested that widespread vaccination would "protect New Mexico's health care systems as vaccines decrease the need for emergency services and hospitalization" and, conversely, "the refusal to receive the COVID-19 vaccine . . . endanger[ed] the individual [and] the community[] and further jeopardize[d] the progress the State ha[d] made." (Def.'s UF ¶ 11–12, ECF 45.) The PHO emphasized that the further spread of COVID-19 in New Mexico posed a threat to the health and wellbeing of children not yet eligible to receive the vaccine, individuals who could not be vaccinated for medical reasons, and vulnerable individuals, including those in congregate care facilities. (Def.'s UF ¶ 15, ECF 45.)

As a result, the PHO promulgated certain directives, including requiring all hospital workers to be fully vaccinated against COVID-19 within 10 days of the PHO's effective date, with their second dose to be received within 40 days of their first dose, unless they qualified for an exemption. (Def.'s UF ¶ 16, ECF 45.) The PHO defined "hospital workers" as

> all paid and unpaid individuals who work on-site in a hospital setting where care is provided to patients or patients have access for any purpose. This includes workers who have the potential for direct or indirect exposure to patients or COVID-19 airborne aerosols. Hospital workers include, but are not limited to, nurses, physicians[,] nursing assistants, technicians, therapists, phlebotomists, pharmacists, students and trainees,

contractual staff not employed by the hospital, and persons not directly involved in patient care, but who could be exposed to infection agents that can be transmitted in the hospital.

(Def.'s M. for Summ. J., Ex. C at 3, ECF 45-3 at 3; Pl's Cross-Mot. for Summ. J., Ex. C, at 3; ECF 49-3 at 3.) The PHO included an exemption from the vaccination mandate for a "sincerely held religious belief." (Def.'s UF ¶ 17–20, ECF 45.) To be eligible for the religious exemption, the hospital worker was required to document that she requested a religious accommodation from her employer and provided "a statement regarding the manner in which the administration of a COVID-19 vaccine conflict[ed] with [her] religious observance, practice, or belief." (Def.'s UF ¶ 19, ECF 45.) If the hospital worker satisfied those requirements, the PHO excused her from the vaccination obligation only if she: (1) provided "adequate proof" of negative COVID-19 tests on a weekly basis; and (2) wore "a mask or multilayer cloth face covering at all times indoors at the hospital or congregate care facility except when eating or drinking."[3] (Def.'s UF ¶ 20, ECF 45.) The PHO emphasized, however, that it did not "preclude[] the entities which employ or contract with [healthcare] workers from providing . . . religious accommodations to the requirements of [the PHO] as required by law." (Def.'s M. for Summ. J., Ex. C at 4, ECF 45-3 at 4; Pl's Cross-Mot. for Summ. J., Ex. C, at 4; ECF 49-3 at 4.)

On December 2, 2021, the New Mexico Department of Health issued an Amended Public Health Emergency Order ("APHO"), which required hospital workers to also receive a COVID-19 booster vaccine no later than January 17, 2022. (Def.'s UF ¶¶ 22, 33, ECF 45; Pl's UF ¶ 12, ECF 49.) The APHO incorporated the same exemptions, the same exemption requirements, and

---

[3] In terms of penalties, the PHO warned that "[a]ny person, hospital, or congregate care facility who willfully violate[d] th[e] Order [could] be subject to civil administrative penalties available at law." (Def.'s UF ¶ 21, ECF 45.) Under N.M. Stat. Ann. § 12-10A-19, a civil administrative penalty of up to $5,000 may be imposed for each violation of the Public Health Emergency Response Act under which the PHO was issued.

the same penalties as did its predecessor. (Def.'s UF ¶¶ 34–36, ECF 45.)  The APHO remained in effect until the Public Health Emergency ended on March 31, 2023. (Def.'s UF ¶ 37, ECF 45.)

Plaintiff's conditional offer letter advised that if she wanted to request an exemption from the COVID-19 vaccination requirement for hospital workers, she should contact the Talent Acquisition Department at UNMH. (Def.'s UF ¶ 4, ECF 45.) On October 26, 2021, Plaintiff advised Ted Padilla, UNMH's Senior Talent Acquisition Partner, that she wished to request an exemption. (Def.'s UF ¶ 5, ECF 45. Pl.'s UF ¶ 5, ECF 49.) Padilla forwarded the exemption form to Plaintiff that same day, advising her to complete and return the form to UNMH Occupational Health Services. (Def.'s UF ¶ 5, ECF 45; Pl.'s UF ¶ 5, ECF 49.)

Plaintiff's start date later moved to April 18, 2022. (Pl.'s UF ¶ 6, ECF 49.) On February 8, 2022, UNM Employee Occupational Health Services (EOHS) advised Plaintiff that she was medically cleared for employment and to wear a respirator after fit testing. (Pl.'s UF ¶ 7, ECF 49.) On April 12, 2022, however, Michelle Gallegos of the UNM Covid-19 Call Center clarified via e-mail that since Plaintiff was to "be employed through UNM Hospitals, [she would] need clearance through OHS, not EOHS."[4] (Pl.'s Cross-Mot. for Summ. J, Ex. B at 3, ECF 49-2 at 3.) The e-mail explained that Plaintiff would "need to get PCR Covid-19 tested prior to [her] start date" and would also "need to participate in weekly PCR testing." (Pl.'s Cross-Mot. for Summ. J, Ex. B at 3, ECF 49-2 at 3.) Gallegos cautioned that UNMH "does not facilitate exemptions for the weekly testing requirement." (Pl.'s Cross-Mot. for Summ. J, Ex. B at 3, ECF 49-2 at 3.)

---

[4] Plaintiff's undisputed material fact 8 states: "On February 12, 2022[,] the Defendant informed Plaintiff that she had been mistaken as to exemptions and she could not obtain a religious based exemption to the Defendant's requirement for weekly invasive testing." (Pl.'s UF ¶ 8 (citing Pl.'s Cross-Mot. Summ. J., Ex. B, ECF 49-2).) The exhibit Plaintiff cites does not support her statement of fact, however, as it contains no correspondence dated February 12, 2022, nor any reference to a communication on that date; and there is no statement found in the exhibit that "Defendant informed Plaintiff that she had been mistaken as to exemptions." *See id*.

The following day, Plaintiff completed the COVID Immunization Exemption Form. (Def.'s UF ¶ 38, ECF 45.) The form included a "Verification and Accuracy" section, which provided: "I understand that if granted an exemption, I will be required to comply with additional safeguards to include requests for periodic proof of negative covid testing." (Def.'s UF ¶ 39, ECF 45; Def.'s Mot. Summ. J., Ex. F, ECF 45-6.)  Plaintiff modified that section so that it instead read: "I understand that if granted an exemption, I will be required to comply with additional safeguards ~~to include requests for periodic proof of negative covid testing.~~ to include screening per CDC and OSHA for healthy persons. – CCruz PsyD."[5] (Def.'s UF ¶ 40, ECF 45; Def.'s Mot. Summ. J., Ex. F, ECF 45-6.) Along with her modified Exemption Form, Plaintiff submitted to UNMH's Human Resources Department a letter requesting an exemption from both COVID vaccination *and* COVID testing and explaining how her religious beliefs conflicted with these requirements. (Def.'s UF ¶ 41, ECF 45; Def.'s Mot. Summ. J., Ex. G, ECF 45-7.) Plaintiff indicated instead that she would "allow for non-invasive screening (as per the CDC and OSHA, which do not require tests for healthy people)." (Def.'s Mot. Summ. J., Ex. G, ECF 45-7.)

On April 21, 2022, Ted Padilla from the Talent Acquisition Department advised Plaintiff via e-mail that her request to waive the weekly testing requirement was denied. (Def's UF ¶ 42, ECF 45; Def.'s Mot. Summ. J., Ex. H, ECF 45-8; Pl's UF ¶ 18.) He explained that "[w]aiving the weekly testing requirement . . . imposed by law (New Mexico Governor's public health order) [was] not a reasonable accommodation" and that "[w]aiving the weekly testing requirements present[ed] an undue burden in that it would present health risks to patients and staff deemed

---

[5] Plaintiff's undisputed material fact 9 states: "*Defendant* filled out a COVID Immunization Exemption Form . . . [, and] *Defendant* made edits to the form to indicate what she did not want to take part in." (Pl.'s UF ¶ 9.) This statement of fact is at odds with UNMH's undisputed material facts 38 and 40, which indicated that it was *Plaintiff* who both completed and modified the form. (*See* Def.'s UF ¶¶ 38, 40.) Critically, Plaintiff did not dispute those statements of fact. (*See* Pl.'s Resp. at 8 (indicating UNMH's UF ¶¶ 38 and 40 were "[n]ot disputed").) Nor did Plaintiff respond to UNMH's position disputing her undisputed material fact 9.

unacceptable by the public health order." (Def's UF ¶ 42, ECF 45; Def.'s Mot. Summ. J., Ex. H, ECF 45-8; Pl.'s UF ¶ 19, ECF 49.) According to Padilla, UNMH was only required to "reasonably accommodate religious beliefs in a fashion that [did] not present undue burden to other staff and patients." (Def's UF ¶ 42, ECF 45; Def.'s Mot. Summ. J., Ex. G, ECF 45-8; Pl's UF ¶ 20, ECF 49.) Padilla asked Plaintiff to confirm whether she was willing to comply with the Vaccine Exemption "in its original form" or if she instead wished to "decline the job offer." (Def's UF ¶ 42, ECF 45; Def.'s Mot. Summ. J., Ex. G, ECF 45-8.)

Plaintiff responded to Padilla on April 24, 2022, asking that he provide the "code of law" to which he was referring in his April 21, 2022 e-mail, the date on which the law was passed by the New Mexico legislature, and the date on which it was signed by the Governor. (Def's UF ¶ 43, ECF 45; Def.'s Mot. Summ. J., Ex. I, ECF 45-9.) Plaintiff insisted that any law requiring COVID-19 testing was "a violation of [her] sincerely-held religious beliefs, practice and observance." (Def's UF ¶ 43, ECF 45; Def.'s Mot. Summ. J., Ex. I, ECF 45-9.) She also specified that "[a]n alternative, requested reasonable accommodation [was] to work from home on a temporary basis, until the pandemic [was] over, or until UNM/UNMH no longer impose[d] th[e testing] policy." (Pl's Cross-Mot. for Summ. J, Ex. F at 1, ECF 49-6 at 1.)

Padilla replied to Plaintiff's e-mail, providing links to the websites where New Mexico's Public Health Orders were posted. (Def's UF ¶ 43, ECF 45; Def.'s Mot. Summ. J., Ex. I, ECF 45-9.) In addition, he explained that "UNMH cannot waive or modify th[e] weekly testing obligation imposed by law upon those opposing vaccination on religious grounds." (Def's UF ¶ 43, ECF 44; Def.'s Mot. Summ. J., Ex. I, ECF 45-9.) Because Plaintiff had "made [her] refusal to test clear," Padilla advised that "UNMH ha[d] rescinded [her] employment offer." (Def's UF ¶ 44, ECF 45; Def.'s Mot. Summ. J., Ex. I, ECF 45-9.) Padilla's e-mail did not specifically address Plaintiff's

alternative request that she be permitted to work temporarily from home. (Def.'s Mot. Summ. J., Ex. I, ECF 45-9.)

Throughout its communications with Plaintiff related to her requested religious accommodations, UNMH did not indicate that those accommodations would present an *economic* burden on UNMH or that an *economic* burden had factored into its analysis or decision to rescind its employment offer. (Pl.'s UF ¶ 25, ECF 49.) In response to an interrogatory asking UNMH to specify the costs it would have incurred had it provided Plaintiff with one of her proposed accommodations (*i.e.*, permitting remote work or masks), UNMH responded as follows:

> [T]here would be costs related to Plaintiff's absence from in-person work, such as the impact of the accommodation on the operation of the facility, including other employees' ability to do their jobs, the impact on the facility's ability to conduct business, the revenue that would be lost associated with that and the impact in the workplace of her only being available remotely.

(Pl.'s Resp., Ex. 1, at 2–3, ECF 48-1; Def's Reply at 4, ECF 53.) UNMH also emphasized that the PHO itself provides "no consideration or notation regarding costs [but] simply requires that a health care worker either be vaccinated or be tested weekly and wear a mask." (Pl.'s Resp., Ex. 1, at 3, ECF 48-1; Def's Reply at 4–5, ECF 53.)

In discovery, UNMH described the costs that it incurred in responding to the COVID-19 pandemic, including for vaccinations and weekly testing, as "incalculable." (Def.'s Resp., UF ¶ A, ECF 48; Def.'s Resp., Ex. 1, ECF 48-1.) It did quantify, however, the labor costs associated with establishing its Employment Screening department, which it "set up for the staffing of the screening call center." (Pl.'s Resp., UF ¶ A, ECF 48; Pl.'s Resp., Ex. 1, ECF 48-1.) For that purpose, UNMH reported that it incurred $6,709,465 in labor costs, including fringe benefits, from April 1, 2020, to June 30, 2023. ECF 48-1. (Pl.'s Resp., UF ¶ A, ECF 48; Pl.'s Resp., Ex. 1, ECF 48-1.) UNMH clarified that beyond the labor costs for setting up the Employment Screening

department, it also incurred other labor costs associated with testing employees, though it was unable to isolate or quantify those costs. (Pl.'s Resp., Ex. 1, ECF 48-1; Def's Reply at 3, ECF 53.)

## II.  SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and must designate specific facts derived from admissible evidence (affidavits, depositions, answers to interrogatories, or admissions) that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). When considering cross-motions for summary judgment, a court may assume that no evidence needs to be considered other than that filed by the

parties, but summary judgment is inappropriate if material factual disputes nevertheless exist. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III. PARTIES' PRIMARY ARGUMENTS

In both its own motion and its response to Plaintiff's cross-motion, UNMH argues that accommodating Plaintiff's request for an exemption from weekly COVID testing would have imposed an undue hardship as a matter of law. ECF 45 at 10. UNMH emphasizes that weekly COVID testing was the only accommodation permitted by the PHOs and suggests that healthcare facilities thus were required to ensure that their workers were vaccinated, tested on a weekly basis, or face the possibility of civil penalties. *Id.* In other words, UNMH argues that excusing Plaintiff from weekly testing would have necessarily imposed an undue hardship by causing UNMH to violate the PHO. *Id.* In addition to putting it in the position of violating state law, UNMH asserts that excusing Plaintiff from the weekly testing requirement would have "placed a substantial burden on UNMH because of the immense health risks to patients and staff, in a facility where vulnerable and ill people go to be treated." *Id.* at 14. UNMH contends that undue hardship can be shown on both economic and non-economic grounds, such as through the "increased risk of contracting and spreading COVID-19." *Id.* at 16.

For her part, Plaintiff insists that UNMH has failed to establish that it would have experienced an undue hardship had it granted Plaintiff's requests for religious accommodation. ECF 49 at 9. Plaintiff's arguments revolve almost exclusively around her position that the United States Supreme Court clarified in *Groff v. DeJoy*, 600 U.S. 447 (2023) that "undue hardship and undue burden are purely economic calculations." *Id.* at 9. Because UNMH has not quantified the *financial* cost of acceding to Plaintiff's requested accommodations, Plaintiff insists that UNMH has failed to demonstrate undue hardship as a matter of law. *Id.* at 10. Plaintiff rejects the

contention that violating State mandates would have imposed an undue hardship, reasoning that upholding a "higher law," such as the Constitution or Title VII, cannot constitute an undue hardship. *Id*. at 11. In addition, she characterizes UNMH's professed health and safety concerns as vague and irrelevant under the purely economic *Groff* standard. *Id*.

## IV. ANALYSIS

Plaintiff's Title VII religious discrimination claim is subject to a two-step burden-shifting framework. *See Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1486 (10th Cir. 1989). First, Plaintiff has the burden to establish a *prima facie* case of discrimination by showing that (1) she has a bona fide religious belief in conflict with an employment requirement; (2) she informed UNMH of that belief; and (3) she was not hired because she failed to satisfy the employment requirement.[6] *See id*. If Plaintiff's evidence satisfies those *prima facie* elements, the burden shifts to UNMH to show that it was unable to reasonably accommodate Plaintiff without undue hardship. *See id*.

### A. Plaintiff's *Prima Facie* Burden

According to Plaintiff, UNMH "does not dispute that Plaintiff has established her prima facie case." ECF 48 at 11. To be sure, UNMH focuses the bulk of its briefing on its own burden to demonstrate undue hardship rather than on Plaintiff's burden to make out a *prima facie* case. *See* ECFs 45; 53; 54. For instance, UNMH does not contest that Plaintiff's requested exemption from COVID vaccination and weekly testing stemmed from a bona fide religious belief, that Plaintiff failed to inform UNMH of her religious beliefs, or that Plaintiff's beliefs were not sincerely held. Rather, for purposes of summary judgment, UNMH accepts the notion that both vaccination and

---

[6] At oral argument, the Court noted that Plaintiff's Amended Complaint alleged that Plaintiff was unlawfully fired or, alternatively, that she was unlawfully not hired at all. Hr'g at 6:15–6:38, 59:55–1:00:00. The Court inquired which of these two claims better comported with discovery. *Id*. Counsel agreed that this was better understood as a "failure to hire" case but that the distinction made no difference for the purpose of analyzing the cross-motions. *Id*. at 6:38–7:00, 1:00:21–1:00:35.

testing violated Plaintiff's sincerely held religious beliefs. At oral argument, its counsel confirmed that UNMH does not dispute that Plaintiff satisfied her *prima facie* burden.[7] *See* Hr'g at 4:40–6:08. As a result, the burden shifts to UNMH to demonstrate undue hardship.

> **B. UNMH has established that permitting Plaintiff to forgo weekly testing yet work on-site would have imposed an undue hardship on the conduct of its business.**

An employer does not violate Title VII if it can demonstrate that the accommodation proposed by the plaintiff would impose an "undue hardship on the conduct of [its] business." 42 U.S.C. § 2000e(j). UNMH advances two primary arguments in support of its position that accommodating Plaintiff's religious beliefs would have imposed an undue hardship. First, it insists that because Plaintiff's request to forgo weekly testing would have required it to violate the PHOs,[8] and thereby subjected it to the possibility of civil penalties, that accommodation necessarily imposed an undue hardship. Second, UNMH contends that exempting Plaintiff from weekly testing would have imposed an undue hardship on the conduct of its business by creating health

---

[7] The Court acknowledges that UNMH argues in its briefing—almost in passing and in a discussion related to undue hardship—that Plaintiff fails to satisfy her *prima facie* burden because the requirement of either vaccination or weekly testing was imposed by the PHOs and not by UNMH. UNMH does not meaningfully develop this argument, other than to suggest that *Weber v. Leaseway Dedicated Logistics*, 5 F. Supp. 2d 1219 (D. Kan. 1998) supports such a conclusion. In *Weber*, the District of Kansas reasoned that the requirement at issue (*i.e.*, that a commercial truck driver provide his social security number) was imposed by federal statute and federal regulation and not by the employer. 5 F. Supp. 2d at 1222. Characterizing the production of a social security number as a requirement imposed by law and not an "employment requirement," the court determined that the plaintiff had not satisfied his *prima facie* burden on summary judgment. *Id. But see Grimes v. N.Y. & Presbyterian Hosp.*, No. 1:23-CV-652 (MKV), 2024 WL 816208, at *4–5 (S.D.N.Y. Feb. 26, 2024) (rejecting an employer's argument that the employee failed to allege a *prima facie* case of religious discrimination because the vaccination mandate was imposed by state law and was not an "employment requirement," noting that the concept of "employment requirement" does not come from the language of Title VII itself and reasoning that "a plaintiff states a claim for religious discrimination under Title VII by plausibly alleging that she 'actually requires an accommodation of [her] religious practice.'") (citation omitted). The Court determines herein, however, that UNMH demonstrates undue hardship as a matter of law as to Plaintiff's request to forgo the weekly testing that was prescribed as an exemption in the PHO. *See infra* Part IV(B). For this reason, and because Defense counsel conceded at oral argument that UNMH did not dispute that Plaintiff satisfied her *prima facie* burden, the Court need not delve into whether Plaintiff has sufficiently demonstrated, for purposes of satisfying her *prima facie* burden, that her religious beliefs were at odds with an "employment requirement" as opposed to a requirement imposed by the PHOs.

[8] For the sake of simplicity and because the relevant provisions were the same, the Court refers to the August 17, 2021 PHO and the December 2, 2021 APHO collectively as the "PHOs."

and safety risks to its patients and staff. The Court agrees that UNMH has sufficiently demonstrated undue hardship in both respects.

### i. *Violation of PHOs*

It is undisputed that Plaintiff requested that UNMH allow her, as a religious accommodation, to forgo weekly COVID-19 testing in favor of "non-invasive screening [] as per the CDC and OSHA." ECF 45-7. UNMH insists, however, that granting this accommodation would have put it in the position of violating the applicable PHOs, thereby imposing an undue hardship as a matter of law. ECFs 45 at 12–13; 53 at 7–8.  In support, UNMH points to recent decisions from the First and Second Circuits and a bevy of district courts. *See* ECFs 45 at 12–13; 53 at 7–8. In each case, the respective court concluded that the employer demonstrated undue hardship by showing that granting the employee's requested accommodation(s) would have required the employer to violate state health mandates or executive orders related to COVID vaccination. *See, e.g.,* ECF 45 at 12–13 (citing *D'Cunha v. Northwell Health Sys*., No. 23-cv-476, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (New York health mandate); *Goodrich v. Good Samaritan Reg'l Health Ctr.*, No. 22-cv-2950-DWD, 2023 WL 3043282 (S.D. Ill Apr. 23, 2023) (Illinois executive order)); ECF 53 at 7–8 (citing *Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023) (Maine health mandate); *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945 (JPO), 2024 WL 917330 (S.D.N.Y. Mar. 4, 2024) (New York health mandate); *Russo v. Patchogue-Medford Sch. Dist.*, No. 22-CV-01569 (HG) (SIL), 2024 WL 149131 (E.D.N.Y. Jan. 12, 2024) (New York health mandate); *Bolonchuk v. Cherry Creek Nursing Ctr.*, No. 22-cv-02590-RMR-KAS, 2023 WL 6870795 (D. Colo. Apr. 12, 2023) (Colorado health mandate)).

Among the decisions that UNMH highlights is the Second Circuit's decision in *D'Cunha*, which involved a state health mandate similar to the one at issue here and which required

healthcare workers to receive COVID-19 vaccinations. ECF 45 at 12 (discussing *D'Cunha*, 2023 WL 7986441). The Second Circuit affirmed dismissal of the healthcare worker's Title VII failure-to-accommodate claim because her employer "could not have granted her religious exemption request without violating the State Mandate, exposing itself to potential penalties, and thereby suffering an undue hardship." 2023 WL 7986441, at *3. In addition, UNMH observes that the Illinois executive order addressed in *Goodrich v. Good Samaritan Regional Health Center* was "virtually identical" to the PHOs at issue here and required all healthcare workers in the state to receive the COVID-19 vaccine unless they submitted to weekly testing. 2023 WL 3043282, at *5. The security officer in *Goodrich*, like Plaintiff here, alleged that both vaccination *and* weekly testing would violate his religious beliefs, and he requested exemption from both. *Id.* Because granting these accommodations would have required his employer to violate state law, the Southern District of Illinois determined that the employer had demonstrated undue hardship as a matter of law. *Id.*

Besides *D'Cunha* and *Goodrich*, UNMH cites numerous other decisions issued by courts across the country in the wake of COVID vaccination mandates for healthcare workers, each employing a similar rationale to reach the same conclusion: violating a state health mandate imposes an undue hardship on an employer. *See* ECF 54 at 16–17.

In contrast, Plaintiff suggests that just one case should guide the Court's undue hardship analysis: *Groff v. DeJoy*. Indeed, Plaintiff is dismissive of the cases on which UNMH relies, describing them as "not on-point" and "not important" in view of the "better, clear[er] definition of undue burden" that the United States Supreme Court provided in *Groff*. ECF 48 at 12. Significantly, Plaintiff reads *Groff* to say that *only* substantially increased *economic* costs can amount to undue hardship on an employer. *Id.* at 13. And because UNMH does not offer any

argument or evidence to substantiate the financial costs it would have incurred had it granted either of Plaintiff's requested accommodations, Plaintiff insists that UNMH has misapplied the applicable standard and has failed to establish undue hardship. *Id.* In Plaintiff's view, she is either entitled to summary judgment or to a jury determination whether UNMH's cost to grant her religious accommodation requests would have exceeded $6.7 million (*i.e.*, the reported cost for UNMH to set up its COVID management program and the only financial benchmark in the record).

UNMH describes Plaintiff's interpretation of *Groff* as inaccurate and myopic. ECF 54 at 13. It insists that *Groff* still permits certain types of non-economic costs to remain proper considerations in the undue hardship analysis so long as they are "substantial" in the context of the employer's business as a matter of common sense. *Id.* at 13–15. UNMH contends that, because it could not have granted Plaintiff's request to forgo weekly testing without violating the PHOs, granting that request would have imposed an undue hardship on UNMH, even under the standard articulated in *Groff*. ECF 53 at 7–9.

The Court agrees that Plaintiff reads *Groff* too narrowly. *Groff* specifies that "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." 600 U.S. at 468. That inquiry is fact-specific and case-by-case and requires consideration of "all the relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 468–71. *Groff* emphasized that lower "courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that [they] would use in applying any such test." *Id.* at 741. "[S]ubstantially increased costs" are certainly a factor courts must

consider in any undue hardship analysis following *Groff*, but they must do so employing common sense and the "ordinary meaning of 'undue hardship.'" *Id*. at 468, 470.

Plaintiff contends that evaluating undue hardship involves comparing the cost of a requested accommodation to some portion of the employer's operating cost. Although she does not cite any case in which a court has adopted her narrow view of the *Groff* standard, her position is not without some footing in *Groff's* language. *Groff* directed lower courts to consider requested accommodations "in light of the nature, 'size and operating cost of [the] employer[,]'" and it confirmed that an employer may demonstrate undue hardship by showing that an "accommodation would result in substantial increased costs in relation to the conduct of its particular business." *See Groff*, 600 U.S. at 470–71.

As a practical matter, though, reducing the undue hardship analysis solely to financial arithmetic would make it nearly impossible for a well-resourced defendant to ever demonstrate undue hardship and, perhaps more importantly, it would run afoul of *Groff's* assurance that it was merely "clarif[ying]" the undue hardship standard, not creating a new, strictly economic, one. *See Groff*, 600 U.S. at 473 (indicating that its decision merely "clarified" the undue hardship standard discussed in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) and corrected assumptions by lower courts that it had prescribed a "more than de minimis" test); *see also Cloutier v. Costco Wholesale* Corp., 390 F.3d 126, 134 (1st Cir. 2004) (pre-*Groff* decision concluding that the undue hardship "calculus applies both to economic costs, such as lost business or having to hire additional employees . . . , and to non-economic costs, such as compromising the integrity of a seniority system"); *EEOC v. Geo Group, Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) (pre-*Groff* decision relying upon the Court's articulation of the undue hardship standard in *Hardison* and recognizing that both "economic and non-economic costs can impose an undue hardship on employers"); *Hailey v.*

*Legacy Health*, No. 3:23-cv-00149-IM, 2024 WL 425328, at *8 (D. Or. Sept. 20, 2024) (observing that "[b]efore *Groff*, federal courts regularly considered both economic and non-economic costs when conducting the undue hardship analysis" and collecting cases).

The Supreme Court explained in *Groff* that "a good deal of the EEOC's guidance" on the topic of undue hardship was "sensible and [would], in all likelihood, be unaffected by [its] *clarifying* decision." 600 U.S. at 471 (emphasis added). That guidance directed employers to consider not only monetary costs but also burdens on the conduct of the employer's business. *See, e.g.,* U.S. EEOC Compliance Manual on Religious Discrimination, CVG-2021-3, § 12-IV(B)(2), *available at* https://www.eeoc.gov/laws/guidance/ section-12-religious-discrimination#h_12929 403436951610749878556 (pre-*Groff* guidance, explaining that "[c]osts to be considered" in the evaluation of undue hardship under Title VII "include not only direct monetary costs but also the burden on the conduct of the employer's business," including diminishing efficiency, infringing on other employee's rights or benefits, impairing workplace safety, burdening coworkers, and "[w]hether the proposed accommodation conflicts with another law"); *see also* U.S. EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, § K.12 (updated 5/28/2021), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. (pre-*Groff* guidance suggesting that an employer should respond to an employee who communicates an inability to receive the COVID vaccine because of sincerely held religious beliefs by considering the "extent of employee contact with [those] whose vaccination status could be unknown or who may be ineligible for the vaccine.").

Moreover, in the Court's view, a common sense interpretation of *Groff's* "substantial increased costs" standard acknowledges the versatility of the word "costs" in ordinary parlance.

Costs can certainly relate to money, but they can also apply to injuries ("cost me my leg"), time ("that detour cost me an hour"), airspeed ("that headwind cost us our connection"), lives ("that Israeli pager operation cost Hezbollah most of its leadership"), or touchdowns ("falling for that faked handoff cost us a touchdown"). Although any court undertaking an undue hardship analysis should follow *Groff's* instruction to consider the size and operating costs of a given employer, to consider *only* financial costs would be to overlook the Court's equally important directive—in the very same sentence—to consider the "practical impact" of the proposed accommodation as well as "all relevant factors." *See Groff*, 600 U.S. at 470–71. And as the Supreme Court implicitly acknowledged, practical impacts and relevant factors are not always monetary. For instance, the Supreme Court effectively blessed consideration of "co-worker impacts" to the extent those impacts affect the conduct of the employer's business and are not driven by religious animosity. *See id.* at 472 (explaining that a court can consider an accommodation's effect on the plaintiff's co-workers, where there are "ramifications for the conduct of the employer's business" and where they are not attributable to religious animosity). Relatedly, the Supreme Court declined to overrule *Hardison*, a case in which it determined an employer would suffer an undue hardship by granting the plaintiff's proposed religious accommodation because it would involuntarily deprive other employees of bargained-for seniority rights—in other words, because it would impose substantial *non-economic* costs. *See id.* at 460–467.

In sum, *Groff* did not constrain the undue burden inquiry to one of dollars and cents, and this Court will not do so now. *Accord Chavez v. San Francisco Bay Area Rapid Transit Dist.*, No. C 22-06119 WHU, 2024 WL 3334741, at *11 (N.D. Cal. Mar. 18, 2024) (concluding that the plaintiff, who argued that the employer's undue hardship showing was insufficient because it was not based on "primarily financial reasons," had misread *Groff*); *Bordeaux v. Lions Gate Entm't,*

*Inc.*, 703 F. Supp. 3d 1117, 1134 (C.D. Cal. 2023) (reasoning that "[n]on-economic impacts on coworkers can be considered" after *Groff*); *Haley*, 2024 WL 4253238, at *9 (explaining that it was "[c]onsistent with the pre- and post-*Groff* authority" to consider both economic and non-economic costs in the undue hardship analysis).

Just as it did not dictate that *only* financial costs should be considered in evaluating undue hardship, *Groff* does not foreclose consideration of an employer's would-be violation of a state health mandate occasioned by granting a proposed religious accommodation. According to the applicable PHOs here, hospital workers were "required to be fully vaccinated against COVID-19 unless they qualif[ied] for an exemption." ECFs 45-3 at 3–4; 45-4 at 4. The PHOs went on to require any hospital worker exempted from the vaccination requirement due to a sincerely held religious belief to submit to weekly testing and wear a mask. ECFs 45-3 at 5; 45-4 at 5. Had UNMH permitted Plaintiff to work on-site while unvaccinated and untested, UNMH would have violated the PHO.[9]

Notably, Plaintiff's counsel conceded at oral argument that of her two religious accommodation requests, her request to forgo weekly testing in favor of healthy person screening was less important and not one the Court needs any longer to analyze. *See* Hr'g at 1:00:41–1:01:48. Apart from her contention that the *Groff* standard is purely economic, Plaintiff offers only this retort to UNMH's argument regarding the violation of applicable PHOs: "Violating a bad law, the

---

[9] The PHO clarified that it did not "preclude[] entities which employ [hospital] workers from providing . . . religious accommodations to the requirements of [the PHO] *as required by law*." ECF 45-3 ¶ 4 (emphasis added). But the Court concludes herein that Title VII did not *require* UNMH to grant Plaintiff's religious accommodation request to forgo weekly testing in favor of non-invasive screening, because to do so would impose an undue hardship on UNMH for health and safety reasons, including those outlined in the PHO itself. *See infra* Part IV.B.ii. With no requirement imposed by Title VII to accommodate Plaintiff by allowing her to forgo weekly testing but remain on-site, UNMH would have violated the PHO had it permitted Plaintiff to do so.

Public Health Order, to uphold a higher law, the constitution itself and Title VII, cannot, ever, be considered an 'undue burden.'" ECF 48 at 14. But critically, Plaintiff does not cite any authority or devote any argument to support her underlying premise that the PHOs were unconstitutional or at odds with Title VII. *Cf. Bolonchuk*, 2023 WL 6870795, at *2 (concluding that the plaintiff did not "provide, nor [was] the Court aware of, any legal authority for" her position that Title VII "preempt[ed]" the Colorado state health mandate); *see also Valdez v. Grisham*, 676 F. Supp. 3d 1021 (D.N.M. 2022) (concluding that plaintiffs failed to state a claim that the PHO's requirement that hospital workers be vaccinated against COVID-19 violated their constitutional rights under the Substantive Due Process Clause, the Equal Protection Clause, or the Procedural Due Process Clause); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (determining that plaintiffs failed to establish the likelihood of success on the merits for their constitutional challenges, including under the Free Exercise Clause, Supremacy Clause, and Fourteenth Amendment, to a New York health mandate requiring COVID-19 vaccinations for healthcare workers, even though that mandate did not include a religious exemption).

Having considered the undue hardship standard articulated in *Groff*, as well as the numerous post-*Groff* decisions cited by UNMH and discovered in the Court's own research, the Court is satisfied that Plaintiff's request that she be permitted, as a religious accommodation, to work on-site and yet forgo both COVID vaccination *and* weekly testing in favor of non-invasive screening would have imposed an undue hardship on UNMH as a matter of law because it would have required UNMH to violate the applicable PHOs, thereby subjecting it to potential civil penalties. *See, e.g., D'Cunha*, 2023 WL 7986441 ("[C]onsistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff*[,] the burden placed on an employer from violating a state law, like the State Mandate in this case, is both 'excessive' and 'unjustifiable.'").

As to this accommodation request, summary judgment is warranted in favor of UNMH. Correspondingly, the Court rejects Plaintiff's argument in her own summary judgment motion that *Groff* precludes a showing of undue hardship apart from evidence demonstrating substantial financial costs.

### ii.  Health and Safety of Coworkers and Patients

UNMH insists that Plaintiff's request to forgo both vaccination and weekly testing and yet work on-site would have imposed an undue hardship for a separate and equally compelling reason—because it would have posed "immense health risks to patients and staff, in a facility where vulnerable and ill people go to be treated." ECF 45 at 14. Numerous post-*Groff* decisions have endorsed similar logic, holding that employers demonstrated undue hardship by showing that a proposed accommodation posed health and safety risks to others and thereby impacted the conduct of the business. *See, e.g., Bushra v. Main Line Health, Inc*., No. 23-CV-1090, 2023 WL 9005584, at *8 (E.D. Pa. Dec. 28, 2023) (concluding that an accommodation requested by an unvaccinated attending physician during a global pandemic would have posed an undue hardship on the defendant's hospital because of the health risks to the physician's coworkers and the hospital's vulnerable patients); *Bordeaux*, 703 F. Supp. 3d at 1134–35 (reasoning that an unvaccinated actress's requested accommodation would have created an undue hardship on the employer by endangering the health of the actress's coworkers and jeopardizing the production of the television show in which she starred); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929 (CS), 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) (describing an "obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing [patient-facing nurses] to remain unvaccinated while working at their respective facilities") (citations omitted); *Wise v. Children's Hosp. Med. Ctr. of Akron*, No. 5:22-

CV-02092, 2024 WL 3345494 (N.D. Ohio July 9, 2024) (concluding that permitting a staff pharmacist to be on premises at a pediatric hospital while remaining unvaccinated and untested "create[d] a heightened health risk that constitute[d] an undue hardship" on the hospital).

In response, Plaintiff again points to *Groff*. She argues that public health considerations do not factor into the undue hardship analysis, because the *Groff* standard is a purely economic calculation. *See* ECF 48 at 14. Having already rejected Plaintiff's interpretation of *Groff*, the Court has little difficulty concluding that the health and safety of Plaintiff's co-workers and UNMH's patients are relevant factors it must consider in the context of UNMH's business as a healthcare facility.

In that regard, the Court observes that UNMH's "patient care mission" is to serve "as an accessible, high-quality, *safety-focused*, comprehensive care provider for all the people of Bernalillo County." ECF 54, Ex. L, at 1 (emphasis added). The PHOs themselves outlined the health and safety risks associated with permitting on-site unvaccinated, untested healthcare workers, who might jeopardize that mission. *See, e.g.*, ECF 45-3 at 1–2. Specifically, the PHOs indicated that a healthcare worker's "refusal to receive the COVID-19 vaccine . . . endanger[ed] the individual [and] the community" and that the further spread of COVID-19 in New Mexico posed a threat to the health and wellbeing of children not yet eligible to receive the vaccine, individuals who could not be vaccinated for medical reasons, and vulnerable individuals, including those in congregate care facilities. *Id*. UNMH's response to Plaintiff accommodation request expressed a similar sentiment: Ted Padilla explained that "[w]aiving the weekly testing requirement . . . imposed by law (New Mexico Governor's public health order) [was] not a

reasonable accommodation" and "present[ed] an undue burden in that it would present health risks to patients and staff deemed unacceptable by the [PHOs]." ECF 45-8.

In light of the adverse consequences from exposure to unvaccinated healthcare workers in a congregate care setting, recognized both by the PHOs and by UNMH, and based on the Court's common sense understanding of the nature of UNMH's business and mission, the Court is satisfied that the potential risks to the health and safety of Plaintiff's co-workers and to UNMH's patients were a burden that was "substantial in the overall context of [UNMH's] business." *See Groff*, 600 U.S. at 468; *see also Bolonchuk*, 2023 WL 6870795 (adopting the magistrate judge's determination that the defendant-employer established a safety-based undue hardship as a matter of law in light of the Colorado public health mandate for personnel in healthcare facilities); *Parks*, 2024 WL 917330, at *3 (concluding, post-*Groff*, that the "heighten[ed] risk of exposure to [the employer's] patients, many of whom [were] immunocompromised or otherwise vulnerable to severe infection . . . separately qualifie[d] as an undue hardship"); *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-cv-01942-IM, 2024 WL 3316199, at *7 (D. Or. July 5, 2024) (concluding, post-*Groff*, that "it is appropriate to consider . . . non-economic costs, like the cost to an employer's mission, in analyzing undue hardship"). In short, UNMH has sufficiently established that the heightened health and safety risks to UNMH's employees and patients that would result from permitting Plaintiff to be on-site at a healthcare facility while unvaccinated and untested would have imposed an undue hardship on UNMH and its mission. Having conceded at oral argument that the Court need not devote analysis to her request to forgo weekly testing in favor of healthy person screening, Plaintiff, too, appears to recognize as much. *See* Hr'g at 1:00:41-1:01:48. As to this accommodation

request, the Court finds in favor of UNMH on its summary judgment motion and against Plaintiff on her own motion.

### C. UNMH has failed to establish that permitting Plaintiff to work remotely was an undue hardship on the conduct of its business.

The Court reaches a different conclusion with respect to Plaintiff's requested accommodation of remote work. Although Defense counsel acknowledged at oral argument that Plaintiff had requested, as a religious accommodation, to temporarily work from home (*see* Hr'g at 23:37–24:11), UNMH omits discussion of that proposed accommodation in its summary judgment motion (*see* ECF 45). In fact, the parties appear to be talking past each other throughout much of their briefing, as UNMH analyzes only the burden associated with *allowing Plaintiff to forgo weekly testing*, whereas Plaintiff analyzes the burden associated with *allowing her to work from home*. *Compare* ECF 45s at 10–17; 53 at 7–11 (discussing request to forgo weekly testing), *with* ECFs 48 at 13; 49 at 8, 10 (discussing request to work remotely). At most, UNMH implicitly suggests in its briefing that working remotely was not an accommodation contemplated by the PHOs. *See* ECF 45 at 17 ("Inasmuch as weekly testing was the *only accommodation* under both [PHOs], UNMH had no choice but to rescind its contingent offer of employment when Plaintiff refused to agree to weekly testing." (emphasis added)). At oral argument, Defense counsel suggested that UNMH even lacked authority to permit its hospital workers to work remotely while the PHOs were in place. *See* Hr'g at 38:23–40:20.

But Plaintiff's explicit request for an "alternative[] reasonable accommodation . . . to work from home on a temporary basis, until the pandemic was over, or until UNMH/UNMH no longer impose[d] th[e testing] policy" gives the Court pause in the context of its undue hardship analysis. ECF 45-9. While Title VII certainly "does not require covered entities to provide the accommodation that Plaintiffs prefer," *see We The Patriots*, 17 F.4th at 292, UNMH has not

pointed to any evidence to suggest that it responded to or even considered Plaintiff's alternative requested accommodation at the time she made the request or before rescinding her conditional offer of employment. Nor does UNMH come forward with any evidence to otherwise show that granting Plaintiff's temporary remote work request would have imposed a substantial hardship on UNMH. What's more, UNMH excerpted its own Exhibit I in such a way that it effectively obscured from the Court's consideration Plaintiff's work-from-home request altogether and, instead, offered an incomplete account of Plaintiff's April 24, 2022 communication with Mr. Padilla. *Compare* ECF 45-9 (Def.'s Ex. I), *with* ECF 49-6 (Pl.'s Ex. F).

To be sure, the PHOs themselves address only one accommodation that might exempt a hospital worker from mandatory COVID-19 vaccination: weekly testing. Although the PHOs do not discuss the potential accommodation of wholly remote work, this is perhaps unsurprising, given the nature of the PHOs and the employees they covered. The covered employees were congregate care facility workers with "direct or indirect exposure to patients or residents," hospital workers "who work *on-site* in a hospital in a setting where care is provided to patients or patients have access for any purpose," and school workers who "serv[e] in a private school, public school, or charter school." ECF 49-3 at 2–3 (emphasis added). Although the Court disagrees with Plaintiff's articulation of the *Groff* standard, it cannot ignore her opposition to UNMH's motion on the ground that UNMH failed to demonstrate that permitting her to temporarily work from home would have imposed an undue hardship on UNMH. *See, e.g.*, ECF 48 at 11.

The Court acknowledges that UNMH's reply brief references a discovery response that touches on Plaintiff's work-from-home request. In an effort to dispute Plaintiff's additional statement of fact related to the financial cost of remote work, UNMH includes a discovery response in which it explained that "there would be costs related to Plaintiff's absence from in-person work."

ECFs 48-1; ECF 53 at 4. Yet the only explanation UNMH offers in that context is its rather vague and conclusory position that permitting Plaintiff to work remotely would have "impact[ed] . . . the operation of the facility, including other employees' ability to do their jobs, . . . the facility's ability to conduct business, the revenue that would be lost associated with that and the impact in the workplace of her only being available remotely." ECF 53 at 4. Moreover, UNMH's summary judgment motion does not affirmatively set forth any statement of fact, affidavit, or other evidence to support the notion that permitting Plaintiff to work from home would have been an undue hardship on UNMH. *See generally* ECF 45.

Although UNMH intimates in its briefing and argued at the hearing that providing an accommodation other than the one contemplated by the PHOs would have resulted in a violation of the PHOs (*see* ECFs 45 at 17; 53 at 4–5; Hr'g at 15:10–20:37; 26:59–27:52; 1:25:05–1:26:25), it is not in fact clear from the language of the PHOs that this is so. *See e.g.*, ECFs 45-3 at 4; (PHO clarifying that it did not "preclude[] the entities which employ . . . [healthcare] workers from providing . . . religious accommodations to the requirements of [the PHOs] as required by law"); *id.* at 3 (defining "hospital worker," in pertinent part, as an individual who "work[s] *on-site in a hospital setting* where care is provided to patients or patients have access for any purpose" (emphasis added)); *see also We The Patriots USA, Inc.*, 17 F.4th at 291–92 (acknowledging that the state health mandate did not bar an employer from providing an employee with a reasonable accommodation, such as telemedicine, that would have removed that employee from the scope of the mandate); *see also Parks*, 2024 WL 917330, at *3 (observing that "an employer might be able to accommodate a religious objection by employing a worker in a manner that removes them from the mandate's definition of 'personnel' altogether"); *Dennison*, 2023 WL 3467143, at *6 (same).

Ultimately, without any meaningful attempt by UNMH to address the hardship it would have suffered had it temporarily permitted Plaintiff to perform her work as a Psychologist remotely, UNMH has failed to demonstrate that it is entitled to judgment as a matter of law. *See Jackson v. N.Y. St. Off. of Mental Health – Pilgrim Psychiatric Ctr.*, No. 23-CV-04164-JMA/ARL, 2024 WL 1908533, at *5–9 (E.D.N.Y. May 1, 2024) (observing that the employer failed to even address the plaintiff's requested accommodation of entirely remote work and concluding that the employer therefore failed to carry its burden to establish undue hardship at the motion to dismiss stage). After all, the summary judgment record contains no factual development as to the nature of Plaintiff's work, such as her job description or duty station, or as to UNMH's operational needs for psychological services. *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 644 (7th Cir. 2023) ("Employers cannot rely on an automatic presumption working from home is unreasonable . . . Determining whether a specific job has essential functions that require in-person work has become much more of a case-specific inquiry."); *West v. Legacy Health*, No. 3:22-cv-01823-HZ, 2024 WL 4276246, at *4 (D. Or. Sept. 20, 2024) (concluding that there was insufficient evidence about the burden of remote work on the employer specifically in the context of the plaintiff's position such that the employer failed to establish undue hardship on summary judgment).

Without any evidence related to the type of work UNMH expected Plaintiff to perform in her role as a Psychologist, the Court is left only with Plaintiff's *allegation* in her Amended Complaint that the "tasks and treatments" she performed as a psychologist could "often" be performed remotely. ECF 12 at ¶ 38. In other words, "[g]aps in the record prevent the 'context-specific application demanded by *Groff*." *Chavez v. San Francisco Bay Area Rapid Transit Dist.*, No. 22-06119 WHA, 2024 WL 3334741, at *11 (N.D. Cal. Mar. 18, 2024). Equally missing from the record is any admissible evidence demonstrating how the effect of permitting Plaintiff to work

from home would have been so adverse to UNMH as to constitute an undue hardship under *Groff*. The record simply does not support summary judgment in UNMH's favor with respect to Plaintiff's request for a temporary work-from-home accommodation.

Turning to Plaintiff's cross-motion, the Court concludes that Plaintiff has likewise failed to demonstrate entitlement to summary judgment on the grounds articulated in her motion. Plaintiff argues that because "undue burden [is a] purely economic calculation[,] and UNMH has failed to show that it would have experienced any economic hardship," she is entitled to summary judgment. ECF 49 at 9. More specifically, because UNMH has not demonstrated that granting Plaintiff the accommodations she requested would have cost more than $6.7 million, the amount UNMH spent to set up part of its COVID management program, Plaintiff insists that UNMH has necessarily failed to establish undue hardship. *Id*. at 10. Essentially, Plaintiff puts all of her eggs in the "purely economic costs" basket. Having rejected this unduly narrow reading of *Groff*, the Court is unpersuaded by these arguments on summary judgment. The Court concludes that Plaintiff, too, has failed to demonstrate that she is entitled to summary judgment in her favor.

## V.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary [ECF 45] is **GRANTED IN PART** and **DENIED IN PART** as described above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary [ECF 49] is **DENIED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***